| | |
|---|---|
| SCOTT W. WALTHER, )<br>)<br>Plaintiff, )<br>)<br>and )<br>)<br>PIONEER RESERVE, LLC, )<br>)<br>Proposed Intervenor-Plaintiff, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, et al., )<br>)<br>Defendants, )<br>)<br>and )<br>)<br>THE SU-KNIK MITIGATION BANK and )<br>SU-KNIK ENVIRONMENTS, LLC, )<br>)<br>Intervenor-Defendants. )<br>_____) | No. 3:15-cv-0021-HRH |

O R D E R

Motions to Dismiss and Other Pending Motions

Defendant United States of America, on behalf of the U.S. Army Corps of Engineers, moves to dismiss plaintiff's amended complaint.[1] This motion is opposed.[2] Intervenor-

---

[1]Docket No. 59.

[2]Docket No. 65.

defendants also move to dismiss plaintiff's amended complaint.[3] This motion is opposed.[4] Oral argument was requested and has been heard on the motions to dismiss.

Also pending in this case are plaintiff's motion for a preliminary injunction,[5] Pioneer Reserve LLC's motion to intervene,[6] plaintiff's motion to supplement the administrative record,[7] and plaintiff's motion for summary judgment.[8]

After hearing oral argument, the court granted the motions to dismiss and denied all of the other pending motions, except for plaintiff's motion for summary judgment. This written order provides a more detailed explanation for the court's rulings as well as disposes of plaintiff's motion for summary judgment.

Background

Plaintiff is Scott W. Walther. Defendants are the United States of America and Christopher D. Lestochi, Colonel, District Commander, U.S. Army Corps of Engineers, Alaska District. Intervenor-defendants are The Su-Knik Mitigation Bank and Su-Knik Environments, LLC.

---

[3]Docket No. 60.

[4]Docket No. 66.

[5]Docket No. 5.

[6]Docket No. 75.

[7]Docket No. 87.

[8]Docket No. 88.

"Under the [Clean Water Act (CWA)], 'any discharge of dredged or fill materials into ... waters of the United States [] is forbidden unless authorized by a permit issued by the Corps of Engineers pursuant to' Section 404 of the CWA[.]" Fairbanks N. Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586, 589 (9th Cir. 2008) (quoting Leslie Salt Co. v. United States, 55 F.3d 1388, 1391 (9th Cir. 1995)). "In issuing § 404 permits, the Corps must comply with the § 404(b)(1) Guidelines..., which are promulgated by the EPA pursuant to 33 U.S.C. § 1344(b)(1), and incorporated by the Corps into its own regulations." Kentuckians for Commonwealth v. U.S. Army Corps of Engineers, 963 F. Supp. 2d 670, 676 (W.D. Ky. 2013). "Under the Corps' CWA Guidelines, a § 404 permit cannot issue 'unless appropriate and practicable steps have been taken which will minimize potential adverse impacts of the discharge [of fill material] on the aquatic ecosystem.'" Ohio Valley Environmental Coalition v. Aracoma Coal Co., 556 F.3d 177, 202 (4th Cir. 2009) (quoting 40 C.F.R. § 230.10(d)). The EPA and Corps have made "'no overall net loss' the goal of the § 404 regulatory program and agree that mitigation has three components: avoidance, minimization, and compensatory mitigation." Id. (citation and footnote omitted). "Avoidance is defined as the selection of the least environmentally damaging practical alternative." Id. "Minimization is achieved through practicable project modifications and permit conditions that minimize adverse impacts." Id. "Finally, compensatory mitigation is used where appropriate to compensate for unavoidable adverse impacts after all

avoidance and minimization measures have been taken." Id.

"On March 31, 2008, the EPA and the Corps issued revised regulations governing compensatory mitigation for authorized impacts to wetlands, streams, and other waters of the United States under CWA Section 404...." Kentuckians for Commonwealth, 963 F. Supp. 2d at 676. Plaintiff refers to these regulations as the "Final Rule."

> When evaluating compensatory mitigation options, the district engineer will consider what would be environmentally preferable. In making this determination, the district engineer must assess the likelihood for ecological success and sustainability, the location of the compensation site relative to the impact site and their significance within the watershed, and the costs of the compensatory mitigation project.

33 C.F.R. § 332.3(a)(1). Permissible mitigation methods include restoration, enhancement, establishment, and preservation. Id. § 332.3(a)(2). When preservation is used as the method of mitigation, certain criteria must be met, including that the resources to be preserved must be "under threat of destruction or adverse modifications[.]" Id. § 332.3(h)(iv).

Compensatory mitigation can be accomplished in one of three ways: 1) mitigation banks, 2) in-lieu fee programs, or 3) permittee-responsible mitigation, with the use of mitigation banks being the preferred method. Id. § 332.3(b). However, this preference "does not override a district engineer's judgment as to what constitutes the most appropriate and practicable compensatory mitigation based on consideration of

case-specific circumstances." 73 Fed. Reg. 19594, 19,628 (April 10, 2008).

"A mitigation bank is an offset of preserved and restored wetlands used to compensate for the environmental impact of more destructive land use." Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1327 (Fed. Cir. 2012). "Landowners can apply for mitigation banking instruments to participate in the program, and then can sell credits under the instrument to developers to offset environmentally destructive projects covered by section 404 permits under the Clean Water Act." Id. "The Corps is in charge of the mitigation banking program and it has issued regulations to establish procedures for granting instruments for mitigation banks." Id.

Any private or public entity (referred to as a sponsor) may propose to establish a mitigation bank. 33 C.F.R. § 332.2. "The district engineer will establish an Interagency Review Team (IRT) to review documentation for the establishment and management of mitigation banks...." Id. § 332.8(b)(1). The IRT is composed of federal, tribal, state and/or local regulatory and resource agency representatives. Id. at § 332.8(b)(2). The "[m]itigation banking instrument [MBI]" is the "legal document for the establishment, operation, and use of a mitigation bank." Id. § 332.2. The sponsor must propose properties for the mitigation bank site, which are then incorporated into the MBI. Id. § 332.8(d)(1).

Plaintiff alleges that he purchased two parcels of property (the Seldon and Edgerton parcels) and that beginning in or around 2006, the Corps encouraged him to turn this

property into a mitigation bank.⁹ Plaintiff alleges that he formed a limited liability company, Pioneer Reserve, LLC, which "entered into a contract ... with the Corps" and this contract "created a wetland mitigation bank known as the Pioneer Reserve Mitigation Bank...."¹⁰ "Following full execution of the Contract, [plaintiff] recorded perpetual conservation easements on his Land and paid ... $140,000[] to a third-party non-profit organization, as a 'financial assurance' to ensure Pioneer's ongoing performance under the Contract."¹¹ After plaintiff "encumbered his Land with perpetual conservation easements, ... Pioneer was awarded wetland mitigation credits that it could sell to CWA § 404 permittees in order to satisfy their compensatory mitigation needs."¹² Although plaintiff alleged that he "remained the owner of the encumbered Land,"¹³ his counsel clarified at oral argument that title to the land is held by Pioneer Reserve.

Plaintiff alleges that on February 5, 2009, the Mat-Su Borough and the Corps "entered into a mitigation banking agreement ... forming [the] Su-Knik" mitigation bank.¹⁴ "The Corps ... awarded Su-Knik's banking credits based on the Borough recording a

---

⁹Amended Complaint at 5, ¶¶ 24-28, Docket No. 49.

¹⁰Id. at 6, ¶ 33-34.

¹¹Id. at ¶ 35.

¹²Id. at ¶ 37.

¹³Id. at ¶ 38.

¹⁴Id. at 9, ¶¶ 61-62.

conservation easement on a Borough-owned property known as the Fish Creek Parcel."[15] Plaintiff alleges that "[t]he Fish Creek Parcel is an inaccessible Black Spruce swamp, with no viable economic use" and that it "is comprised of undevelopable, high quality wetlands."[16] Plaintiff alleges that Su-Knik's banking credits are not valid because they are "based solely on the Borough's preservation of the non-threatened Fish Creek Parcel...."[17]

Plaintiff alleges that in September 2012, the Corps issued a § 404 permit to the Alaska Railroad Corporation (ARRC) which required ARRC to buy mitigation credits from Su-Knik.[18] Plaintiff alleges that the Corps has issued seventeen § 404 permits for which compensatory mitigation was provided, at least in part, from the Su-Knik mitigation bank.[19] Plaintiff alleges that the Corps required the ARRC to purchase mitigation credits from Su-Knik even though

> (i) Pioneer's wetland banking credits were the highest ranked ecologically preferable alternative source of compensatory mitigation, (ii) the ARRC's permitted impacts to [waters of the United States] occurred in Pioneer's service area, and (iii) Pioneer's service area was the only mitigation bank service area that encompassed the ARRC's permitted impacts to

---

[15] Id. at 10, ¶ 66.

[16] Id. at ¶¶ 72-73.

[17] Id. at 11, ¶ 76.

[18] Id. at 10, ¶ 65.

[19] Id. at 11, ¶ 79.

[waters of the United States.][20]

On February 10, 2015, plaintiff commenced this action. In his amended complaint, plaintiff asserts a claim under the "citizen suit" provision in Section 505(a)(2) of the CWA and claims under the APA.[21] Plaintiff seeks declaratory and injunctive relief. Plaintiff requests that the court declare that the Corps violated the Final Rule when it awarded mitigation banking credits to Su-Knik.[22] Plaintiff also requests that the court declare that the "CWA § 404 permits that were issued with compensatory mitigation requirements being satisfied by the permittee(s) purchasing banking credits from Su-Knik were unlawful in that they were issued in violation of the CWA and the Final Rule[.]"[23] Plaintiff requests that the Corps be enjoined "from requiring, or authorizing any CWA § 404 permittee to satisfy its compensatory mitigation requirement by purchasing mitigation banking credits from Su-Knik until such time as Su-Knik is awarded mitigation banking credits in full compliance with the requirements of the Final Rule[.]"[24] And, plaintiff requests that the court "order the Corps to comply with the Final Rule and take steps to ensure that the

---

[20] Id. at 7, ¶ 40.

[21] Plaintiff appears to be challenging two final agency actions, each which would be a separate APA claim.

[22] Amended Complaint at 13, Docket No. 49.

[23] Id. at 12.

[24] Id.

-8-

Borough, as sponsor of the Su-Knik, provides alternative compensatory mitigation, in compliance with the Final Rule, to support the award of all banking credits that Su-Knik has already sold[.]"[25]

Defendant the United States and intervenor-defendants (referred to colletively as "defendants" herein) now move to dismiss plaintiff's amended complaint.

## Discussion

Pursuant to Rule 12(b)(1), Federal Rules of Civil Procedure, defendants move to dismiss plaintiff's CWA claim for lack of subject matter jurisdiction. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, defendants are making a facial attack. "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." Id. "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014).

Defendants argue that the court lacks subject matter jurisdiction because the United States has not waived its sovereign immunity. "As a sovereign, the United States is

---

[25]Id.

immune from suit unless it waives its immunity." Shirk v. United States ex rel. Dep't of Interior, 773 F.3d 999, 1003 (9th Cir. 2014). "Federal agencies and instrumentalities, as well as federal employees acting in their official capacities within their authority, are similarly immune from suit." South Delta Water Agency v. United States, Dep't of Interior, Bureau of Reclamation, 767 F.2d 531, 536 (9th Cir. 1985). "Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction over cases against the [federal] government." Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1117 (9th Cir. 2003).

Plaintiff alleges that this court has jurisdiction of his CWA claim pursuant to Section 505(a)(2) of the CWA, which provides, in pertinent part, that:

> any citizen may commence a civil action on his own behalf–
>
> * * *
>
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

33 U.S.C. § 1365(a)(2).

The CWA states that "[e]xcept as otherwise expressly provided in this chapter, the Administrator of the Environmental Protection Agency (hereinafter in this chapter called 'Administrator') shall administer this chapter." 33 U.S.C. § 1251(d). Plaintiff contends that the "[e]xcept as otherwise expressly provided" language means that the Administrator may be someone other than the Administrator of the EPA. Plaintiff argues that because the

CWA expressly provides that the Corps administers the § 404 permitting program, the Corps is the Administrator for purposes of Section 505(a)(2) claims involving § 404 permits.

Plaintiff cites to National Wildlife Federation v. Hanson, 859 F.2d 313 (4th Cir. 1988), in support of his argument. There, the plaintiff brought Section 505(a)(2) claims against both the EPA and the Corps. Id. at 314-15. On appeal, the government argued that the district court had lacked subject matter jurisdiction because "the NWF's suit did not qualify as a citizen suit under section 1365(a)(2) because the NWF challenged the Corps' exercise of discretion with respect to wetlands and not the EPA administrator's failure to carry out a mandatory duty." Id. at 315. The court rejected this argument, explaining that

> Sections 404 and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1344 and 1365(a) must be read together. Section 1344 authorizes the Secretary of the Army acting through the Army Corps of Engineers to regulate the discharge of dredged or fill material into United States waters, including wetlands. The Corps' permit decisions must be based on EPA guidelines. Section 1344(c) authorizes the Administrator of the EPA to block or override a Corps' permit decision. Section 1365(a)(2) authorizes any citizen to commence a civil action "against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator."
>
> * * *
>
> Congress cannot have intended to allow citizens to challenge erroneous wetlands determinations when the EPA Administrator makes them but to prohibit such challenges when the Corps makes the determination and the EPA fails to exert its authority over the Corps' determination. Section 1365(a)(2) should be

-11-

> interpreted in conjunction with Civil Procedure Rule 20 (joinder) to allow citizens to sue the Administrator and join the Corps when the Corps abdicates its responsibility to make reasoned wetlands determinations and the Administrator fails to exercise the duty of oversight imposed by section 1344(c).

Id. at 315-16.

However, "Hanson is contrary to a series of other cases[.]" Alliance To Save Mattaponi v. U.S. Army Corps of Engineers, 515 F. Supp. 2d 1, 6 (D.D.C. 2007). In Preserve Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers, 87 F.3d 1242, 1245 (11th Cir. 1996), the plaintiff brought claims under Section 505(a)(2) against the Corps and the EPA. The district court dismissed these claims on a motion to dismiss "ruling that neither the EPA nor the Army Corps of Engineers was subject to suit in this case." Id. The court of appeals affirmed the dismissal of the Section 505(a)(2) claims against the Corps because

> Section (a)(2) of the citizen suit provision of the Clean Water Act does not clearly and ambiguously waive sovereign immunity in regard to the Army Corps of Engineers. The statute states that a citizen can sue 'where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary ...' 33 U.S.C. § 1365(a)(2). It does not refer to the Army Corps of Engineers. We must conclude that Congress did not intend to waive sovereign immunity in regard to suits against the Army Corps of Engineers under the Clean Water Act.

Id. at 1249.

In Cascade Conservation League v. M.A. Segale, Inc., 921 F. Supp. 692, 695 (W.D.

Wash, 1996), the plaintiff brought Section 505(a)(2) claims against the Corps, the chief administrator of the Corps, the EPA, and the EPA Administrator. The court dismissed the plaintiff's Section 505(a)(2) claims against the Corps because the "Administrator" is defined in Section 1251(d) as the Administrator of the EPA and thus "[u]nder the rules of construction..., the Court may not extend the waiver beyond the statute's express terms to include the Corps. This conclusion is reinforced by the fact that the statute elsewhere refers specifically to the 'Secretary,' meaning 'the Secretary of the Army, acting through the Chief of Engineers.'" Id. at 696 (quoting 33 U.S.C. § 1344(d)). The court concluded that "'Administrator' ... is not a catchall term." Id.

And the court in Alliance To Save Mattaponi, 515 F. Supp. 2d at 6, found "Hanson ... unpersuasive," explaining that

> [h]owever puzzled the court may have been by the statute, and even if the court were correct that "Congress cannot have intended to" waive sovereign immunity as to EPA but not as to the Corps, Congress's presumed intent is not the question when a court interprets a sovereign immunity waiver. Where possible, such an interpretation "begins and ends with the express terms of the statute. The Court must rely on plain meaning interpretation to the extent possible, and must resolve any ambiguities against a finding of waiver." Cascade Conservation League, 921 F. Supp. at 697; see also Ardestani v. INS, 502 U.S. 129, 137 (1991) (waivers "must be strictly construed in favor of the United States"). Here, a bar to CWA suits against the Corps "is precisely what the express terms of the statute accomplish, so the Court must assume that it was what Congress intended. '[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it

> says there.'" Cascade Conservation League, 921 F. Supp. at 697 (quoting Connecticut Nat'l Bank v. Germain, 503 U.S. 249 (1992)).

Contrary to plaintiff's contention, these courts have not ignored the plain language of Section 505(a)(2) or Section 1251(d). Section 505(a)(2) only waives sovereign immunity as to the suits against the Administrator. Section 1251(d) expressly defines the term "Administrator" to mean the Administrator of the EPA. Section 1251(d) contemplates that the Administrator of the EPA may not administer all portions of the CWA, but it does not suggest that the term "Administrator" refers to anyone other than the Administrator of the EPA. Because Section 505(a)(2) does not waive immunity for suits against the Corps, the court lacks subject matter jurisdiction over plaintiff's CWA claim and this claim is dismissed with prejudice.

Defendants also move to dismiss plaintiff's APA claims on the grounds that plaintiff lacks standing and that such claims are barred by the statute of limitations. As indicated at oral argument, the court has serious doubts as to plaintiff's standing but assumes for purposes of the instant motions to dismiss that plaintiff has standing to bring his APA claims.[26] As for whether plaintiff's APA claims are barred by the statute of limitations, "[a] motion to dismiss based on a statute of limitations defense is proper under Rule 12(b)(6)."

---

[26] Even if the court were to have found that plaintiff lacked Constitutional standing or prudential standing, or both, the court would have been inclined to give plaintiff leave to amend his standing allegations as to his APA claims.

-14-

Piazza v. Brackett, Case No. 1:11 CV 01536 AWI, 2013 WL 3166283, at *2 (E.D. Cal. June 20, 2013). "Such a motion may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit a plaintiff to prove that the statute was tolled.'" Id. (quoting Jablon v. Dean Witter & Co., 614 F.2d 677, 682 (9th Cir. 1980)).

"APA claims are subject to a six-year statute of limitations." Hells Canyon Preservation Council v. U.S. Forest Srvc., 593 F.3d 923, 930 (9th Cir. 2010). Both of plaintiff's APA claims involve a challenge to the validity of the Su-Knik mitigation bank instrument, which makes the relevant date for determining whether the statute of limitations has run the date on which the Corps approved that instrument. Plaintiff alleges that the Corps and the Borough "entered into a mitigation banking agreement" on February 5, 2009.[27] Plaintiff filed this action on February 10, 2015, which was six years and five days later. Thus, plaintiff's APA claims, as currently pled, are barred by the statute of limitations, and these claims are dismissed. Plaintiff's APA claims are, however, dismissed without prejudice because plaintiff may be able to fix the statute of limitations problem.

Conclusion

Defendants' and intervenor-defendants' motions to dismiss[28] are granted. Plaintiff's amended complaint is dismissed. Plaintiff's CWA claim is dismissed with prejudice, and

---

[27] Amended Complaint at 9, ¶ 61, Docket No. 49.

[28] Docket Nos. 59 and 60.

plaintiff's APA claims are dismissed without prejudice. Plaintiff may file a second amended complaint as to his APA claims only. Should plaintiff elect to file a second amended complaint, that complaint shall be filed on or before August 27, 2015.

Because plaintiff currently has no viable claim, his motion for a preliminary injunction[29] is denied. For the same reason, his motion for summary judgment[30] is denied. Because plaintiff is being given leave to amend as to his APA claims, Pioneer Reserve's motion to intervene[31] is denied as moot. For the same reason, plaintiff's motion to supplement the administrative record[32] is summarily denied with leave to renew should plaintiff elect to file a second amended complaint.

DATED at Anchorage, Alaska, this 27th day of July, 2015.

/s/ H. Russel Holland
United States District Judge

---

[29]Docket No. 5.

[30]Docket No. 88.

[31]Docket No. 75.

[32]Docket No. 87.