IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

SCOTT W. WALTHER and PIONEER RESERVE, L.L.C.,

    Plaintiffs,

    vs.

UNITED STATES OF AMERICA, et al.,

    Defendants,

    and

THE SU-KNIK MITIGATION BANK and SU-KNIK ENVIRONMENTS, LLC,

    Intervenor-Defendants.

No. 3:15-cv-0021-HRH

O R D E R

Motions to Dismiss

Defendant United States of America, on behalf of the U.S. Army Corps of Engineers, moves to dismiss plaintiffs' second amended complaint.[1] This motion is opposed.[2]

---

[1] Docket No. 95.

[2] Docket No. 98.

Intervenor-defendants also move to dismiss plaintiffs' second amended complaint.[3] This motion is opposed.[4] Oral argument has not been requested and is not deemed necessary.

Background

Plaintiffs are Scott W. Walther and Pioneer Reserve, L.L.C. Defendants are the United States of America and Christopher D. Lestochi, Colonel, District Commander, U.S. Army Corps of Engineers, Alaska District. Intervenor-defendants are The Su-Knik Mitigation Bank and Su-Knik Environments, LLC.

"Under the [Clean Water Act (CWA)], 'any discharge of dredged or fill materials into ... waters of the United States [] is forbidden unless authorized by a permit issued by the Corps of Engineers pursuant to' Section 404 of the CWA[.]" Fairbanks N. Star Borough v. U.S. Army Corps of Engineers, 543 F.3d 586, 589 (9th Cir. 2008) (quoting Leslie Salt Co. v. United States, 55 F.3d 1388, 1391 (9th Cir. 1995)). "In issuing § 404 permits, the Corps must comply with the § 404(b)(1) Guidelines..., which are promulgated by the EPA pursuant to 33 U.S.C. § 1344(b)(1), and incorporated by the Corps into its own regulations." Kentuckians for Commonwealth v. U.S. Army Corps of Engineers, 963 F. Supp. 2d 670, 676 (W.D. Ky. 2013). "Under the Corps' CWA Guidelines, a § 404 permit cannot issue 'unless appropriate and practicable steps have been taken which will minimize potential adverse

---

[3]Docket No. 96.

[4]Docket No. 99.

impacts of the discharge [of fill material] on the aquatic ecosystem.'" Ohio Valley Environmental Coalition v. Aracoma Coal Co., 556 F.3d 177, 202 (4th Cir. 2009) (quoting 40 C.F.R. § 230.10(d)). The EPA and Corps have made "'no overall net loss' the goal of the § 404 regulatory program and agree that mitigation has three components: avoidance, minimization, and compensatory mitigation." Id. (citation and footnote omitted). "Avoidance is defined as the selection of the least environmentally damaging practical alternative." Id. "Minimization is achieved through practicable project modifications and permit conditions that minimize adverse impacts." Id. "Finally, compensatory mitigation is used where appropriate to compensate for unavoidable adverse impacts after all avoidance and minimization measures have been taken." Id.

"On March 31, 2008, the EPA and the Corps issued revised regulations governing compensatory mitigation for authorized impacts to wetlands, streams, and other waters of the United States under CWA Section 404...." Kentuckians for Commonwealth, 963 F. Supp. 2d at 676. Plaintiffs refer to these regulations as the "Final Rule." "Permit applicants are responsible for proposing an appropriate compensatory mitigation option to offset unavoidable impacts." 33 C.F.R. § 332.3(a)(1). The district engineer then evaluates the proposal. Id.

> When evaluating compensatory mitigation options, the district engineer will consider what would be environmentally preferable. In making this determination, the district engineer must assess the likelihood for ecological success and

> sustainability, the location of the compensation site relative to the impact site and their significance within the watershed, and the costs of the compensatory mitigation project.

Id. Permissible mitigation methods include restoration, enhancement, establishment, and preservation. Id. § 332.3(a)(2). When preservation is used as the method of mitigation, certain criteria must be met, including that the resources to be preserved must be "under threat of destruction or adverse modifications[.]" Id. § 332.3(h)(iv).

Compensatory mitigation can be accomplished in one of three ways: 1) mitigation banks, 2) in-lieu fee programs, or 3) permittee-responsible mitigation, with the use of mitigation banks being the preferred method. Id. § 332.3(b). However, this preference "does not override a district engineer's judgment as to what constitutes the most appropriate and practicable compensatory mitigation based on consideration of case-specific circumstances." 73 Fed. Reg. 19,594, 19,628 (April 10, 2008).

"A mitigation bank is an offset of preserved and restored wetlands used to compensate for the environmental impact of more destructive land use." Hearts Bluff Game Ranch, Inc. v. United States, 669 F.3d 1326, 1327 (Fed. Cir. 2012). "Landowners can apply for mitigation banking instruments to participate in the program, and then can sell credits under the instrument to developers to offset environmentally destructive projects covered by section 404 permits under the Clean Water Act." Id. "The Corps is in charge of the mitigation banking program and it has issued regulations to establish procedures for

granting instruments for mitigation banks." Id.

Any private or public entity (referred to as a sponsor) may propose to establish a mitigation bank. 33 C.F.R. § 332.2. The "[m]itigation banking instrument" [MBI] is the "legal document for the establishment, operation, and use of a mitigation bank." Id. The sponsor must propose properties for the mitigation bank site, which are then incorporated into the MBI. Id. § 332.8(d)(1).

Plaintiffs allege that Walther purchased land in the Mat-Su Borough which was suitable for development and that the Corps encouraged him to encumber his land with perpetual easements rather than develop it.[5] More specifically, plaintiffs allege that "[t]he Corps assured Walther that it would require the [Alaska Railroad] to buy compensatory mitigation in the form of mitigation bank credits from a mitigation bank site to be established by Walther on a part of the Land, if and when the PMRE [Port McKenzie Rail Extension] project was issued a CWA § 404 permit."[6] Plaintiffs allege that "[f]ollowing these assurances, Walther formed and became an owner of Pioneer [Reserve L.L.C.], and Pioneer entered into a mitigation bank agreement ('the Contract') with the Corps."[7] "The Contract created a wetland mitigation bank known as the Pioneer Reserve Mitigation

---

[5]Second Amended Complaint at 6, ¶¶ 32-34, Docket No. 94.

[6]Id. at 7, ¶ 39.

[7]Id. at ¶ 40.

Bank."[8]  "Following full execution of the Contract, the Land was conveyed to Pioneer" and "Pioneer proceeded to record perpetual conservation easements on [the] Land and paid ... $140,000[] to a third-party non-profit organization, as a 'financial assurance' to ensure Pioneer's ongoing performance under the Contract.'"[9]  "After Pioneer encumbered the Land with perpetual conservation easements, ... Pioneer was awarded wetland mitigation credits that it could sell to CWA § 404 permittees in order to satisfy their compensatory mitigation needs."[10]  Plaintiffs allege, however, that

> after Pioneer performed all of its obligations under the Contract, including encumbering the Land with conservation easements, and despite the fact that Pioneer's mitigation banking credits were the highest ranked ecologically preferred compensatory mitigation available, rather than require the [Alaska Railroad] to satisfy its compensatory mitigation needs by purchasing Pioneer's mitigation banking credits, the Corps required the [Railroad] to buy 'invalid' banking credits from the Su-Knik Mitigation Bank....[11]

The Mat-Su Borough is the sponsor of the Su-Knik Mitigation Bank.[12]  "The Corps awarded Su-Knik's mitigation banking credits based on the Borough recording a

---

[8] Id. at ¶ 41.

[9] Id. at ¶¶ 42-43.

[10] Id. at ¶ 45.

[11] Id. at 8, ¶ 48.

[12] Id. at 11, ¶ 78.

conservation easement on a Borough-owned property known as the Fish Creek Parcel."[13] Plaintiffs allege that "[t]he Fish Creek Parcel was not under any threat of destruction or adverse modifications whatsoever when it was encumbered by a conservation easement and contributed into Su-Knik."[14] Thus, plaintiffs contend that Su-Knik's banking credits were not valid. Plaintiffs allege that the Corps has issued seventeen § 404 permits for which compensatory mitigation was "provided by the purchase of Su-Knik's invalid credits."[15]

Plaintiffs allege that "Pioneer's economic interest in its mitigation bank credits was, and continues to be, damaged and Pioneer is adversely affected and aggrieved, when the Corps fails to require offsetting compensatory mitigation for permitted impacts to [waters of the United States] in compliance with the non-discretionary requirements of the Final Rule."[16] Plaintiffs also allege that "Walther has suffered economic injury, and faces the imminent threat of continuing, irreparable economic injury, as a direct and proximate result of the Corps' failure to perform its non-discretionary duties" under the Final Rule.[17] Plaintiffs further allege that "[t]he Corps' award of mitigation bank credits to the Su-Knik

---

[13] Id. at 12, ¶ 83.

[14] Id. at ¶ 84.

[15] Id. at 13, ¶ 97.

[16] Id. at 14, ¶ 103.

[17] Id. at 3-4, ¶ 15.

Mitigation bank, without complying with the non-discretionary requirements of the Final Rule, adversely affected Pioneer's economic interest in its mitigation bank credits and Walther's economic interest in his ownership interest in Pioneer."[18]

In their second amended complaint, plaintiffs assert a single APA claim.[19] In their prayer for relief, they ask that the court

> (1) find that the Corps' alleged actions violated the APA, the CWA, and the CWA's implementing regulations, including the Final Rule, (2) find that Su-Knik's mitigation bank credits are invalid and were not awarded in compliance with the Final Rule, (3) order the Corps to cause the sponsor of the Su-Knik Mitigation Bank, the Matanuska-Susitna Borough, to provide compensatory mitigation, in compliance with the Final Rule for all mitigation credits previously sold by the Su-Knik Mitigation Bank that has been awarded in violation of the Final Rule, (4) order the Corps to comply with the non-discretionary requirements of the Final Rule as it issues CWA § 404 permits, and (5) grant such further relief as this cause merits.

Defendants and intervenor-defendants (referred to colletively as "defendants" hereinafter) now move to dismiss plaintiffs' second amended complaint on the grounds that plaintiffs lack standing to bring their APA claim.

---

[18]Id. at 6, ¶ 31.

[19]Walther's first amended complaint was dismissed but he was given leave to amend to address a statute of limitations problem with his APA claim. Docket No. 93. Plaintiffs' second amended complaint, on its face, cures the statute of limitations problem with the APA claim.

Discussion

"Under Rule 12(b)(1)" of the Federal Rules of Civil Procedure, "a court may dismiss a complaint for lack of subject matter jurisdiction if the plaintiff cannot satisfy the standing requirements set by Article III of the U.S. Constitution." Brod v. Sioux Honey Ass'n Co-op., 895 F. Supp. 2d 972, 974 (N.D. Cal. 2012) (citing Chandler v. State Farm Mut. Auto. Ins. Co., 598 F.3d 1115, 1121–22 (9th Cir. 2010)). "'A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence.'" Id. (quoting Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003)). Because defendants are making a facial challenge here, "the [c]ourt must accept all allegations of fact in the complaint as true." Id. at 974-75.

"Standing to bring suit in federal court under Article III is an 'irreducible constitutional minimum' consisting of three elements: injury in fact, causation, and redressability." El Dorado Estates v. City of Fillmore, 765 F.3d 1118, 1121 (9th Cir. 2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). "As the parties invoking federal jurisdiction, plaintiffs bear the burden of establishing their standing to sue." San Diego County Gun Rights Committee v. Reno, 98 F.3d 1121, 1126 (9th Cir. 1996).

Defendants first argue that Walther cannot show that he has suffered an injury in fact. "An injury in fact is an invasion of a legally protected interest that is both (1) concrete and particularized and (2) actual or imminent, as opposed to conjectural or hypothetical."

El Dorado Estates, 765 F.3d at 1121. A member of an LLC, such as Walther, does not have standing to sue on his own for an alleged economic injury caused by a third party to the LCC. See, e.g., Shell Petroleum, N.V. v. Graves, 709 F.2d 593, 595 (9th Cir. 1983) ("To have standing to maintain an action, a shareholder must assert more than personal economic injury resulting from a wrong to the corporation"). "However, a shareholder does have standing where he or she has been injured directly and independently of the corporation." Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1318 (9th Cir. 1989).

Walther contends that he "has been damaged because the value of the mitigation bank credits, owned by the mitigation bank in which he invested, has been destroyed by the [d]efendant's actions."[20] Walther insists that his personal standing is derived from his contribution of his land to the LLC and thus he has been injured directly and independently of Pioneer.

Assuming without deciding that Walther has adequately alleged an injury in fact that is independent of any alleged economic injury to Pioneer,[21] neither Walther nor Pioneer have standing to pursue an APA claim because plaintiffs' alleged economic injuries are not

---

[20]Plaintiffs' Opposition to Defendant United States of America's Motion to Dismiss Second Amended Complaint at 8, Docket No. 98.

[21]The court would have jurisdiction even if Walther does not have standing to sue if Pioneer has standing to sue. See Cetacean Community v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) ("We have jurisdiction if at least one named plaintiff has standing to sue, even if another named plaintiff in the suit does not").

likely to be redressed by any relief the court might grant. "To establish redressability, [plaintiffs] must show that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Bernhardt v. County of Los Angeles, 279 F.3d 862, 869 (9th Cir. 2002). "A claim may be too speculative if it can be redressed only through 'the unfettered choices made by independent actors not before the court[].'" Id. (quoting Lujan, 504 U.S. at 560).

Plaintiffs argue that it is likely that their economic injuries will be redressed by a favorable ruling from this court. Plaintiffs contend that "[t]he essence of the remedy" they seek "is that the [c]ourt order [the Corps] to comply with the nondiscretionary mandates of the Final Rule as it administers the CWA Section 404 permitting program."[22] If the court orders the Corps to comply with the nondiscretionary mandates of the Final Rule, then plaintiffs contend that the value of Pioneer's bank credits will be restored and Walther's investment in Pioneer will be protected.

However, it is speculative, at best, that if the court were to find that the Su-Knik Mitigation Bank credits were invalid because the Corps had not complied with the requirements of the Final Rule, that plaintiffs' alleged economic injuries would be redressed. Even if Su-Knik Mitigation Bank credits could not be used during the Section 404 permitting process that does not mean that a permittee would purchase banking credits from Pioneer.

---

[22]Plaintiffs' Opposition to Defendant United States of America's Motion to Dismiss Second Amended Complaint at 11, Docket No. 98.

As set out above, a Section 404 permittee is not required to use a mitigation bank to meet its compensatory mitigation requirements. A Section 404 permittee <u>may</u> elect to use bank credits for compensatory mitigation, but the permitttee can also use an in-lieu fee program or it can directly implement compensatory measures at the impact site itself. As even Walther concedes, if the Su-Knik Mitigation Bank credits cannot be used because they are invalid, "there is no guarantee Pioneer Reserve's bank credits will be selected"[23] instead. As plaintiffs point out, they are not required to show that a favorable decision from the court is <u>sure</u> to redress their injuries, but they must show that it is likely that a favorable decision will redress their injuries. Here, it is not likely that a favorable decision will redress plaintiffs' alleged economic injuries because a Section 404 permittee may propose, and the district engineer may approve, a compensatory mitigation plan that does not include the use of mitigation banking credits. Because plaintiffs' alleged economic injuries will not be redressed by a favorable decision by this court, plaintiffs lack constitutional standing to bring their APA claim.[24]

---

[23]Plaintiff Scott W. Walther's Reply to Intervenor-Defendants' Opposition to his Motion for Preliminary Injunction at 8, Docket No. 57.

[24]Because the court has determined that plaintiffs lack constitutional standing, the court need not address intervenor-defendants' argument that plaintiffs also lack prudential standing. The court also need not address defendants' argument that paragraph 99 of plaintiffs' second amended complaint should be dismissed. Because plaintiffs do not have constitutional standing to pursue their APA claim, the court does not have subject matter jurisdiction over plaintiffs' second amended complaint.

## Conclusion

Based on the foregoing, defendants' and intervenor-defendants' motions to dismiss are granted. Plaintiffs are not given leave to amend. Plaintiffs have already had one opportunity to attempt to cure the jurisdictional defects in their complaint. See Griggs v. Pace Amer. Group, Inc., 170 F.3d 877, 879 (9th Cir. 1999) ("the trial court's discretion" to deny leave to amend "is particularly broad where, as here, a plaintiff previously has been granted leave to amend"). Moreover, the deficiencies in plaintiffs' second amended complaint cannot be cured by amendment because plaintiffs cannot allege any injury in fact that could be redressed by a favorable decision by this court. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000) (explaining that leave to amend should be given unless the deficiencies in the complaint cannot be cured by amendment). The clerk of court shall enter judgment dismissing plaintiffs' second amended complaint with prejudice.

DATED at Anchorage, Alaska, this 9th day of November, 2015.

/s/ H. Russel Holland
United States District Judge